**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**WILLIAM E. INGRAM**                                                                                              **PLAINTIFF**

**v.**                                         **CASE NO. 4:05-CV-526 GTE**

**METROPOLITAN LIFE INSURANCE**
**COMPANY, EASTMAN CHEMICAL**
**COMPANY, and EASTMAN LONG-TERM**
**DISABILITY PLAN**                                                                                                **DEFENDANTS**

**ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE RECORD**

This case arises under the Employment Retirement Income Security Act ("ERISA"). Plaintiff appeals the denial of benefits under the Long Term Disability Insurance Plan (hereinafter "the Plan"). Presently before the Court is Plaintiff's Motion for Judgment on the Administrative Record and Defendants' Motion for Summary Judgment. As Defendants' Motion requests judgment in its favor based upon a review of the administrative record, the Court will consider Defendant's Motion for Summary Judgment as, instead, a Motion for Judgment on the Administrative Record.

**I. Background**

Plaintiff William E. Ingram worked as a maintenance mechanic with Defendant Eastman Chemical Company ("Eastman") from December 1988 to September 2003, and was a participant in the Eastman Long Term Disability Plan ("the Plan"). Metropolitan Life Insurance Company ("MetLife") served as the claims administrator of the Plan.

Mr. Ingram submitted a long-term disability claim to MetLife on May 17, 2004, listing

Dr. Dennis Davidson as his primary physician, Dr. Bruce Safman as the physician treating his fibromyalgia, Dr. Wayne Bruffet as the physician treating his lumbar diskogenic pain, Dr. M. Ismail as the physician treating his lower back pain and hypertension, and Dr. Margaret Kuykendall as the physician treating his chest pains. With his long-term disability claim, Mr. Ingram submitted an Attending Physician's Statement ("APS") from Dr. Safman.

In the APS, Dr. Safman indicated Mr. Ingram's primary diagnosis to be "fibromyalgia with chronic fatigue, IBS", and the secondary diagnosis to be degenerative disc disease. Dr. Safman noted Mr. Ingram's physical ability "varies with activity of fibromyalgia - may differ day to day" and notes no other physical restrictions or limitations.

MetLife requested an Employability Assessment from a certified rehabilitation consultant, Deborah Mix. Relying upon the medical evaluation report dated July 23, 2004, Ms. Mix noted that Mr. Ingram could lift or carry up to twenty-five (25) pounds, lift up to ten (10) pounds above shoulder level, push or pull up to twenty-five (25) pounds, and stand or sit for up to two hours. With these physical limitations, Ms. Mix concluded that Mr. Ingram was capable of performing a "light duty" job, and identified several positions from a Labor Market Survey which Mr. Ingram was capable of performing.

MetLife denied Mr. Ingram's claim for long-term disability benefits on August 5, 2004. Mr. Ingram appealed this determination. MetLife referred the appeal to Dr. Robert Porter for a medical review. Dr. Porter concluded that Mr. Ingram could perform light to medium duty work and that the medical records did not support a disabling condition requiring any significant restrictions or limitations on Mr. Ingram's work abilities. Dr. Porter noted that Mr. Ingram's angiograms showed only mild hypertension, and that Dr. Safman's diagnosis of fibromyalgia was not supported with evaluations of site-specific tender points or control points. Based upon Dr.

Porter's assessment and a finding that light duty positions were available in Mr. Ingram's geographical area, MetLife upheld its initial determination and denied Mr. Ingram's appeal on February 7, 2005.

On September 5, 2004, the Social Security Administration awarded Mr. Ingram with Social Security Disability benefits as of March 2004. (AR054).

**II. Medical History**

Dr. Dennis Davidson, Mr. Ingram's primary care physician, has been treating Mr. Ingram for several years. On November 25, 2003, Dr. Davidson noted, "This 56-year-old hypertensive, dyslipidemic, white male with CAD, fibromyalgia, and lumbar discogenic pain presents here in the office today for follow-up of these multi clinical problems." (AR039). On May 26, 2004, Dr. Davidson reported "[Mr. Ingram] complains of a productive cough that is greenish in color at times which has been going on for two weeks. His eyes are mattery at times as well. He also wants to discuss the Tricor; he has no leg strength and feels like it is the medicine. He has been out for over one week and would like to try something different. He says his joint/back/leg pain is a limiting factor for activity. His fibromyalgia is acting up and always bothers him a little." (AR082). In September 2003, Dr. Davidson referred Mr. Ingram to a specialist, Dr. Bruce Safman, a physical medicine and rehabilitation physician with Arkansas Specialty Care Centers.

Dr. Safman saw Mr. Ingram on September 5, 2003 and concluded, "I believe this gentleman has classical fibromyalgia. Although I did put him on work restrictions, I suspect that he will be a candidate for social security disability. I suspect fibromyalgia is the major cause of his disability rather than the degenerative disc disease." (AR038). Dr. Safan noted that an MRI revealed that Mr. Ingram "has severe degenerative disc disease L2-L3. There

is no significant disc herniation." (AR037). On June 25, 2004, Mr. Ingram complained of an exacerbation of his symptoms associated with the weather, and Dr. Safman gave Mr. Ingram a trigger point injection. Mr. Ingram continued to visit Dr. Safman on a monthly basis from September 17, 2003 through September 25, 2004. By letter dated August 6, 2004, Dr. Safman wrote: "With the fibromyalgia, fatigue and chronic aches and pains, I do not think he is capable of continuing to perform vigorous physical activity on an ongoing basis. The activity with fibromyalgia tends to fluctuate." (AR049). On August 19, 2004, Dr. Safman wrote: "Mr. Ingram was denied disability. He has hired an attorney to assist him. The patient reports that he is having an exacerbation of symptoms. He is in the process of being terminated from work. The patient is under a great deal of stress. He reports that his restless leg syndrome has exacerbated. He is not sleeping at night. His depression has increased. On examination, he has a great deal of tenderness and trigger points in the upper trapezius muscles and lower lumbar paravertebral muscles. He has diffuse trigger points elsewhere but they are less severe." (AR048).

Dr. Bruffett, an orthopedic surgeon, examined Mr. Ingram on July 15, 2002 for back pain. Dr. Bruffett observed that Mr. Ingram walked with a normal gait, could go up on his toes and heels without difficulty, had diminished range of motion of the lumbar spine, had normal and painless range of motion in his hip, and had no edema or atrophy. An MRI revealed no problems requiring surgery and Dr. Bruffett concluded that Plaintiff should be referred to a non-operative specialist if further treatment was warranted. (AR238).

Dr. Kuykendall saw Mr. Ingram on June 11, 2003 and noted "Exertional chest pain - vague, short lived chest pain which is nevertheless suspicious for angina given its predictable occurrence with activity and relief with rest." (AR140). Dr. Kuykendall also noted that Mr. Ingram's hypertension was "well controlled presently", and from a nuclear stress test, that Mr.

Ingram achieved 69% of his age predicted maximal heart rate. (AR140).

Dr. Ismail saw Mr. Ingram three times for lower back pain on June 12, 2004, June 17, 2004, and July 9, 2004. Dr. Ismail's initial evaluation noted no focal signs but widespread tenderness in the lumbar area. He diagnosed Mr. Ingram with multi-level degenerative disc disease and suggested epidural steroid injections. Mr. Ingram received lumbar epidural injections on June 17, 2004 and July 9, 2004.

**III. Standard of Review**

District courts review an ERISA plan administrator's decision to terminate benefits *de novo*, unless the benefits plan vests the administrator with the discretionary authority to determine benefits eligibility or to interpret the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957-58 (1989). Where the plan administrator has such discretionary powers, courts review a denial-of-benefits claim with a deferential eye, overturning the administrator's decision only if it was "arbitrary and capricious". *See*, *e.g.*, *Lickteig v. Business Men's Assur. Co. of America*, 61 F.3d 579, 583 (8th Cir. 1995).

In applying the deferential standard of review to a denial of disability benefits determination, the Court must consider whether a "'reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.'" *Ferrari v. Teachers Ins. and Annuity Association*, 278 F.3d 801, 807 (8th Cir. 2002) (*quoting Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997)). "In evaluating reasonableness, the court determines 'whether the decision is supported by substantial evidence which is more than a scintilla, but less than a preponderance.'" *Id.* (*quoting Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)).

**IV. Analysis**

The Plan here gives Defendant Metropolitan Life Insurance Company ("MetLife") the discretionary authority to determine eligibility of benefits. Accordingly, the Court will consider MetLife's denial of benefits with the deferential standard of review.

The Long-Term Disability Plan ("Plan") defines disability as follows:

> To be considered disabled, you must meet *all* of the following criteria:
> - You are totally and continually unable to engage in *gainful work* as a result of your condition. This is not limited to employment at Eastman Chemical Company, but includes the general workforce.

(AR002-03). It appears the Plan requires that a claimant's disability precludes any type of work in order to be entitled to long-term disability benefits. In other words, a claimant may be disabled from his own occupation, but the Plan would not award benefits unless the disability rendered the claimant unable to perform any type of work.

From the medical documents in the administrative record, it appears that despite the diagnoses of fibromyalgia and hypertension, Mr. Ingram's physicians did not conclude that he was totally disabled from performing any type of work, as required by the Plan. Indeed, on August 6, 2004, Dr. Safman expressed his opinion that "[w]ith the fibromyalgia, fatigue and chronic aches and pains I do not think that [Mr. Ingram] is capable of continuing to perform vigorous physical activity on an ongoing basis. The activity with fibromyalgia tends to fluctuate." (AR049).

Plaintiff points to various physicians' notes which repeatedly refer to diagnoses of fibromyalgia, hypertension, coronary artery disease, and other pains and aches. While such diagnoses are important to this inquiry, the Court notes that Plaintiff provides no indication that any physician concluded that Mr. Ingram was physically incapable of any type of work or that any diagnostic or other medical test reveals such severe physical limitations upon Mr. Ingram.

Plaintiff urges the Court find that MetLife unreasonably concluded that Mr. Ingram was capable of performing some type of "light duty" because Dr. Safman described "classical fibromyalgia" as the major cause of Mr. Ingram's disability. This argument is meritless. The Eighth Circuit has clearly stated that "Where there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless 'the administrative decision lacks support in the record, or . . . the evidence in support of the decision does not ring true and is . . . overwhelmed by contrary evidence.'" *Coker v. Metropolitan Life. Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002). MetLife was not obligated to find that Mr. Ingram was totally disabled from working merely because a physician states that fibromyalgia is causing a disability. Indeed, MetLife could credit Dr. Safan's diagnosis of fibromyalgia but still deny long-term disability benefits because the mere diagnosis of fibromyalgia does not necessarily indicate that Mr. Ingram is totally disabled as defined by the Plan. Indeed, the medical evidence here supports a finding that Mr. Ingram was not capable of certain types of physical labor, but that he was capable of certain types of sedentary or light work.

Plaintiff also argues that MetLife's requirement that Mr. Ingram apply for Social Security Disability benefits, but declining to adopt the Social Security Administration's findings is duplicitous and unreasonable. The Court disagrees. Some circuits have found certain claims administrators had engaged in questionable activity by urging a claimant to seek Social Security benefits and then, once granted, denying the claim for benefits under its disability plan. *See*, *e.g.*, *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir. 1998). Those cases are distinguished from the case at bar because MetLife's Plan contains a provision requiring a claimant to apply for Social Security Disability Insurance Benefits and there is no evidence that MetLife engaged in the type of

dubious behavior exhibited in the *Ladd* case. Moreover, the Eighth Circuit has held that claims administrators may deny a disability claim despite a benefits plan provision requiring an application for Social Security benefits as long as the plan "does not equate Social Security disability with Plan disability." *Cox v. Mid-America Dairymen, Inc.*, 965 F.2d 569, 573 (8th Cir. 1992) ("Although § 2.49 provides that a Plan participant must apply for Social Security disability benefits to be eligible for Plan disability benefits, it does not equate Social Security disability with Plan disability. Thus, we conclude that Mid-America's Plan gives the Retirement Committee some discretion to deny a claim despite a Social Security determination of disability.").

Additionally, Plaintiff challenges the administrative appeal process arguing that MetLife failed to conduct a meaningful review by failing to describe what additional information was needed and why such was needed. The Court finds Plaintiff's argument unpersuasive.

A claimant is entitled to a "full and fair review", which includes "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) (quotation omitted). In *Abram*, the circuit court determined that remand to the plan administrator was appropriate because: (1) the claimant "should have been permitted to review and respond to the report" of the reviewing physician upon which the administrator relied; and (2) the administrator did not consider evidence of the claimant's morbid obesity as a potentially disabling condition contributing to her reported fatigue. *Id.* at 886-87. Here, the denial letter of August 5, 2004 clearly states: "Although your physician stated that you are unable to perform your job as Maintenance Mechanic due to the physical demands of the job, he has indicated that you should be able to perform at the light level of physical demand. . . . Given your work history,

aptitudes, and medical conditions, you possess a level of employability consistent with the following occupations on a gainful basis. . . ." (AR216-17). The letter goes on to list five occupations: belt repairer, office machine servicer, hand tools repairer, electric-tool repairer, and tool repairer. The letter concludes its determination by stating: "Mr. Ingram since there are jobs available in your area that you could do with your limitations, you are not eligible for Long Term Disability benefits." (AR217). In explaining Mr. Ingram's right to request a review of the adverse determination, the letter states: "When requesting this review, please state the reason(s) you believe the claim was improperly denied and submit any request to review pertinent documents. You may also submit additional medical or vocational information and in [sic] facts, data, questions or comments you deem appropriate for us to give you appeal proper consideration." (AR217). It appears to the Court that MetLife's denial letter not only clearly stated the grounds for its denial of benefits, but it also afforded Mr. Ingram with the opportunity to review any documents and to supplement the record on appeal. Under these circumstances, the Court concludes that Mr. Ingram was not denied a "full and fair review".

While it is well-established that the claims administrator cannot arbitrarily refuse to credit the opinion of a treating physician, the Court finds that it is not unreasonable for MetLife to have denied Mr. Ingram's long-term disability claim due to the lack of objective medical evidence showing that Mr. Ingram was incapable of any type of work. *See McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 925 (8th Cir. 2004) ("It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence."). Accordingly, the Court concludes that MetLife's decision to deny long-term benefits under the Eastman Long Term Disability Benefits Plan is supported by more than a scintilla of evidence and was not arbitrary and capricious.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Judgment on the Record (Dkt. #14) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment (Dkt. #20) treated herein as a Motion for Judgment on the Administrative Record be, and it is hereby, GRANTED.

Dated this 25th day of August, 2006.

                                           _/s/ Garnett Thomas Eisele_____
                                           UNITED STATES DISTRICT JUDGE